UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **NICHOLE LYNN BAXTER** | **CIVIL ACTION NO.: 3:16-cv-142** |
| **VERSUS** | **JUDGE JOHN W. DEGRAVELLES** |
| **JASON MICHAEL ANDERSON KLLM TRANSPORT SERVICES, L.L.C. AND GREAT WEST CASUALTY COMPANY** | **MAG. RICHARD L. BOURGOIS, JR.**<br><br>**JURY TRIAL** |

## MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE "REPTILE THEORY" TESTIMONY, ARGUMENT, EXHIBITS OR OTHER EVIDENCE

MAY IT PLEASE THE COURT:

Defendants, **KLLM Transport Services, LLC** and **Great West Casualty Company** (hereinafter collectively, "Defendants"), who submit the following memorandum in support of their Motion in Limine to preclude Plaintiff and her witnesses and her counsel from making references in the presence of the jury (whether by testimony, argument, exhibits, or otherwise) that attempt to utilize the "Reptile Theory" of juror persuasion. For the following reasons, Defendants request that this Court preclude such references at the February 5, 2018 trial of this matter.

### INTRODUCTION

Defendants bring this motion in limine to preclude Plaintiff, her counsel, and her witnesses from making references in the presence of the jury, whether by testimony, argument, exhibits, or otherwise, that attempt to utilize the "Reptile Theory" of juror persuasion, that is, that call upon the jury to find in Plaintiff's favor in order to protect the jurors themselves or their community, as opposed to properly considering whether plaintiff is entitled to damages under applicable legal standards.

In 2009, David Ball and Don Keenan published their book, "Reptile" which they touted as "The Attorney's Manual of the Plaintiff's Revolution." The basic premise of the book is that all humans (including jurors) make certain decisions at a "Reptilian" level - using a portion of their brains similar to those in reptiles that are the source of instinctive, unconscious decisions allowing us to survive. The authors explain that the goal at trial should be to get a juror's brain into "Reptilian" survival mode because "when the Reptile sees a survival danger, she protects her genes by impelling the juror to protect himself and the community."[1]

The fundamental premise of the Reptile Theory is that plaintiff's attorneys should show the jury that the defendants' conduct was not just a threat to the plaintiff but was a threat to "society," as well as the jurors themselves and their families. The book, however, does not stop with this appeal to juror self-interest. It also advocates an array of improper trial tactics, such as encouraging the jury to disregard or minimize jury instructions in favor of "God's law," and inventing self-created "safety rules" such as a defendants' supposed duty to "eliminate all needless danger" or make their operations "as safe as possible." Along the way, the authors suggest such tactics as pointing out that "the defendant has never apologized to the plaintiff," "the defendant has not inquired as to how the plaintiff is coming along," and that the case must be tried because the defendant did not offer a sufficient settlement. They also advocate telling the jury that its verdict is an opportunity to "speak out" and be the subject of publicity as the "conscience of the community." A compendium of excerpts from "Reptile" detailing and advocating such tactics is attached as Exhibit A.

These tactics are designed to inflame the passions of jurors, cause them to elevate self-interest over a dispassionate review of the evidence, and disregard applicable legal duties.

---

[1] See Exhibit "A" at 19 attached to the Affidavit of Ralph Aucoin, Jr.

2

Nonetheless, it has become routine for plaintiff attorneys to attempt to "work in" the Reptile Theory at every stage of the proceedings from voir dire to closing argument.

Defendants bring this motion in limine to avoid having to repeatedly object to improper questions or statements (giving the jury the impression that the defense is attempting to hide something) or asking for curative instructions or admonitions and attempting to "unring the bell" after the damage has already been done. *See, e.g.. State v. Holmes*, 122 Wn. App. 438, 93 P.3d 212 (2004) ("[T]he bell is hard to unring. The defense is in a difficult position. 'Counsel must gamble on whether to object and ask for a curative instruction---a course of action which frequently does more harm than good---or leave the comment alone."').

## LAW AND ARGUMENT

**I.    Reptile Tactics Are Antithetical to Traditional Rules Protecting the Fundamental Rights of All Parties to a Fair Trial Based Upon the Evidence**

> The right to a fair trial includes the right to an impartial trier of fact and the correlative right to a trial free of appeals to passion and prejudice. We take great care to excuse prospective jurors who may be subject to emotional appeals. We take great care to instruct jurors not to discuss the case with outsiders or to read about it, so that they will remain beyond the reach of influence outside the courtroom. It is a minimum propriety to guard against calculated attempts to prejudice the jury inside the courtroom, for they do violence to the substantial rights of the litigant. Still worse, they would in the long run so debase the judicial process that no one could enter a courtroom confident of a fair trial. *Sabella v. Southern Pac. Co.*, 70 Cal.2d 311, 326 (1969) (Traynor Dissent)

Authority for barring improper evidence and argument is Fed. R. Civ. Proc. 403, authorizing the Court to exclude evidence when its probative value is substantially outweighed by substantial danger of undue prejudice, confusing the issues, or misleading the jury. "[E]vidence may be unfairly prejudicial under [evidence] rule 403 if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or 'triggers other mainsprings of human action."' *Carson v. Fine*, 123 Wn.2d 206, 223, 867 P.2d 610, 620 (1994);

*citing* 1 J. Weinstein & M. Berger, Evidence § 403[03], at 403-36 (1985). "Reptile" tactics are precisely that - calculated attempts to prejudice the jury by encouraging them to depart from neutrality, to decide the case based on their personal interests and bias, and to substitute their own judgment as to what the law should be, in disregard of the jury instructions.

**II.     Reptile Theory ls Nothing More Than Elaborate Violations of the Prohibition Against Golden Rule Arguments.**

The irony of the Reptile philosophy is that the book teaches plaintiffs' attorneys how to appeal to the fears, emotions and desires of the individual jurors yet, at the same time, contains a 59-page appendix compiling case law from every jurisdiction condemning such tactics.[2] Thus, to cite but one example, "to advise jurors to decide a case as they would want it decided if they or their loved one were the litigants is to establish a false standard for the basis of judgments…. Attorneys should not tell the jury, in effect, that the law authorizes it to depart from neutrality and to make its determination from the point of view of bias or personal interest." *Danner v. Mid-State Paving Co.*, 252 Miss. 776, 173 So.2d 608, 614 (1965).[3] "The vice inherent in such argument is that it invites the jurors to disregard their oaths and to become non-objective viewers of the evidence which has been presented to them …." *Leach v. Metzger*, 241 Md. 533, 217 A.2d 302, 304 (1966)[4]. "Such argument is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Lopez v. Langer*, 114 Idaho 873, 761 P.2d 1225 (1988)[5].

These and other cases cited in the "Reptile" appendix also recognize that the prohibition on the Golden Rule argument is not limited simply to the "what would you take for this injury" questions. Courts have condemned any arguments that encourage the jury to depart from

---

[2] *Id*. at pp. 267-326.
[3] *Id*. at p. 293.
[4] *Id*. a p. 290.
[5] *Id*. a p. 281

4

neutrality and to decide the case on the basis of personal interest and bias. Thus, reversal was mandated even when "the argument complained of did not ask the jurors to put themselves in the shoes of any party; rather, the argument asked members of the jury to consider the effect of a plaintiff's verdict on a non-party, on themselves, and on volunteerism in general." *Walton v. City of Manchester*, 140 N.H. 403, 666 A.2d 978 (1995).[6]

The Reptile authors also recognize that the "conscience of the community" argument they tout has been condemned as a variation on the Golden Rule. For example, in *Blue Grass Shows, Inc. v. Collins*, 614 So.2d 626 (Fla. 1st DCA 1993)[7], plaintiff's counsel argued:

> The fair is coming back to Jacksonville, bringing the amusement back. You folks, as you sit here in Duval County, Florida, you become the conscience of the community. It is you who will tell the fair what kind of standard and what kind of protection you want for the citizens of this town by your verdict; that you aren't going to tolerate this type of thing where they invite people to use their amusements and don't safeguard them properly and hurt the people in Jacksonville, Florida. You are the conscience of the community.

The court observed that "legions of cases" condemn such arguments and, "beyond question, this line of argument was improper." *Id*.

Courts have repeatedly rejected such "conscience of the community" arguments as impermissible variations of the Golden Rule argument. *See, e.g., Westbrook v. General Tire and Rubber Co*., 754 F.2d 1233, 1268 (5th Cir. 1985) (A "conscience of the community argument constitutes 'improper distraction from the jury' s sworn duty to reach a fair, honest and just verdict according to the facts and evidence presented at trial"); *U.S. v. Johnson*, 968 F.2d 768 (8th Cir. 1992) (prohibiting unduly inflammatory and prejudicial "conscience of the community" arguments); *U.S. v. Solivan* 937 F.2d 1146 (6th Cir. 1991) (recognizing as improper any "conscience of the community" argument that is designed to inflame or incite the jury, and

---

[6] *Id*. at pp. 298-299.
[7] Id. a pp. 328-329.

reversing conviction based on prosecutor 's closing argument urging jurors to "send a message" because it appealed to the jurors' emotions, passions and prejudices); *U.S. v. Monaghan* 741 F.2d 1434 (D.C. Cir. 1984) ("a prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future law breaking.")

It is also improper to suggest to the jury that they should follow any subjective standard on deciding whether a party has breached a duty of due care. "It is universal law that the standard of care in negligence cases is that of a reasonable man. The courts have uniformly reversed cases where a subjective standard was suggested to a jury." *Stanley v. Ellegood*, 382 S.W.2d 572, Ky. (1964). Relatedly, one cannot argue that a jury should convict a defendant for driving while intoxicated "because they could be the next fatality of a drunk driver," because such an argument improperly appeals to the jury as the "community conscience." *Schoon v. Looby* S.D. 123, 670 N.W. 2d 885, 889 (2003).[8]

Earlier this year, Judge Andrus of the King County Superior Court ruled that "Plaintiffs may not argue that Defendant presented in the past or currently presents a safety threat to society or to the jurors or the jurors' families." Exhibit B, Order on Defendant's Motions in Limine, *Antonette T.L. Robinson, et al v. Arvinmeritor, Inc.*, No. 142-13403-7 SEA, 7/18/2016, at 4.

### III. The Reptile Theory Encourages Jurors to Disregard Instructions

In the chapter entitled "Safety Rules and the Reptile," the authors explain that every case needs an "umbrella rule" to trigger the juror's "reptilian survival instincts."[9] They define the umbrella rule for almost every case as: "a [driver, construction worker, landowner, etc.] is not

---

[8] *Id*. at pp. 311-312.
[9] *Id*. at p. 55.

allowed to needlessly endanger the public."[10] In a subsection entitled "The Reptile and the Standard of Care," they explain how to use this rule as a way to divert the jury's attention from the actual standard of care:

> The Reptile is not fooled by defense standard-of-care claims. Jurors are, but not Reptiles. When there are two or more ways to achieve exactly the same results, the Reptile allows - demands! - only one level of care: the safest. And the Reptile is legally right. The second-safest available choice, no matter how many "experts" say it's okay, always violates the legal standard of care ...[11]

Counsel is not permitted to present arguments misstating the law. If counsel is allowed to ignore applicable Louisiana negligence standards and substitute "the safest standard" or the "avoiding needless harm" standard, defense witnesses will be subjected to cross-examination as to whether they make "safety their top priority," whether they agree that "danger is never appropriate," that "reducing risk is always top priority," etc. By definition these questions are inherently flawed because they lack specificity to allow a specific answer and they are irrelevant as to the question of whether the defendant driver is liable under Louisiana law.

Throughout the discovery process in this matter plaintiff's counsel has exhibited a tendency towards these "Reptile Theory" tactics which should not be allowed at trial. For instance, during the deposition of defendant driver, Jason Anderson, he was asked safety questions in an effort to re-define the applicable standard of care such as:

> Q. What about the docking station? Was there a place where you could have stopped your vehicle there in order to determine where you were supposed to back your vehicle in?
>
> A. I would have been in the way of other trucks backing into the docks.
>
> Q. **Would that have been more or less safe than parking on the shoulder?**[12]

---

[10] *Id*.
[11] *Id*. at pp. 62-63.
[12] See Exhibit C Deposition of Jason Anderson 48:23-49:5 (emphasis added)

7

Plaintiff's counsel also asked the following questions in an attempt to elicit a response designed to set up a new standard of care:

Q. Have you learned anything from this litigation and this motor vehicle accident?

\*\*\*

Q. Is there anything that, given the same scenario and circumstances, that you would change in the future?

\*\*\* and

Q. Is there anything you regret about this motor vehicle accident?[13]

Similarly, the investigating officer, who was giving his first deposition and did not witness the accident and is not qualified in accident reconstruction, was also asked a series of impermissible questions concerning opinions he is not qualified to offer in an effort to equate a notation on his police report of "careless operation" with being "reckless" then "negligence" and ultimately to assert that such a person "must be held responsible for their actions."[14]

Again, if we were dealing with a situation where counsel "inadvertently" asked a witness whether it was appropriate to "needlessly endanger the public," that would be one thing. However, when we know that these false standards are designed to frighten jurors into believing that their verdict will cause their families and the community to be "safer," the importance of precluding such references is evident.

At its core, the Reptile philosophy is an attempt to derogate the judicial process that values fair trials free of influences outside the courtroom and improper appeals to passion and prejudice. It is a trial strategy that cynically panders to a juror's subconscious fears for the safety of themselves, their family and their community, to their religious beliefs and to their prejudices

---

[13] *See* Exhibit C Deposition of Jason Anderson 84:16-17; 85:8-10; and 85:24-25.
[14] See Exhibit D Deposition of Officer Reginald Mims 47:12-50:4.

against any individuals or entities they view as potentially threatening. It actively encourages violations of the Golden Rule by attempting to persuade fearful jurors to elevate the legal standard of care to include artificial "safety standards" and biblical decrees. Its use should be prohibited.

## CONCLUSION

For the foregoing reasons, KLLM Transport Services, LLC and Great West Casualty Company respectfully request that this Court GRANT its Motion in Limine to preclude Plaintiff and her witnesses and her counsel from making references in the presence of the jury (whether by testimony, argument, exhibits, or otherwise) that attempt to utilize the "Reptile Theory" of juror persuasion.

Respectfully submitted:

*PERRIER & LACOSTE, LLC*
*s/ Ralph J. Aucoin, Jr.*
_____
**GUY D. PERRIER, #20323**
**RALPH J. AUCOIN, JR. #31023**
365 Canal Street, Suite 2550
New Orleans, Louisiana  70130
Tel: (504) 212-8820; Fax: (504) 212-8825
gperrier@perrierlacoste.com
raucoin@perrierlacoste.com
**ATTORNEYS FOR DEFENDANTS,**
**KLLM TRANSPORT SERVICES, LLC, AND**
**GREAT WEST CASUALTY COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been delivered to all counsel of record, either through the CM/ECF system, depositing a copy of same in the United States mail, first class postage prepaid, by hand delivery or by facsimile transmission, this 2nd day of June, 2017, at their last known address of record.

*s/ Ralph J. Aucoin Jr.*
_____
 **RALPH J. AUCOIN, JR.**